**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | **KAREN JENSEN** | : | **Chapter 13** |
| | | : | |
| | **Debtor** | : | **Bky. No. 04-34567ELF** |
| | | : | |

# M E M O R A N D U M

### I.

Presently before me in this chapter 13 case is the Application for Compensation ("the Application") filed by the Debtor's counsel, David A. Scholl, Esquire, ("Mr. Scholl"). The Debtor's plan was confirmed by Order of this court dated March 3, 2008. In the Application, Mr. Scholl requests the allowance of compensation of $29,296.37.

Due to Mr. Scholl's inexcusable breach of his obligations under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, I will disallow the Application in its entirety. This harsh result may be ameliorated, however, because I will permit Mr. Scholl to take action to "purge" his improper conduct. If he does so, he may again apply for compensation and, at that time, I will determine the appropriate amount of compensation, if any, to be allowed after consideration of all of the circumstances of this case.

### II.

### A.

This was a hotly contested chapter 13 case. There are more than two hundred (200) docket entries in the main case. In addition, two (2) adversary proceedings emanated from the case. See Adv. No. 05-530 and Adv. No. 05-445. Further complicating things, the Debtor's

disputes with certain of her creditors were interrelated to another bankruptcy case, one filed by the Debtor's mother, Anne C. Froio ("Mrs. Froio"). See Bky. No. 06-13498ELF. Mrs. Froio, too, was represented by Mr. Scholl. Mrs. Froio's bankruptcy case itself generated a separate adversary proceeding. See Adv. No. 06-047.

The procedural history of the Jensen and Froio cases is well-known to Mr. Scholl, the Debtor, the Chapter 13 Trustee and the participating creditors. Much of that history was summarized in In re Jensen, 369 B.R. 210 (Bankr. E.D. Pa. 2007), a decision that: (1) resolved an important dispute between the Debtor and her brother regarding the ownership of the residential real property that serves as the Debtor's residence ("the Property") and (2) narrowed the issues that needed to be resolved to determine the confirmability of the Debtor's proposed chapter 13 plan (what was then the Debtor's Seventh Amended Chapter 13 Plan). Therefore, I will not review that history in detail. Suffice it to say, that even after the issuance of my decision on June 11, 2007, the interested parties continued to expend considerable time and effort in both the main case and in adversary litigation. These efforts were rewarded, however, as they culminated in the consensual "Revised Tenth Amended Chapter 13 Plan," filed on February 12, 2008 and confirmed on March 3, 2008.

Confirmation of the Debtor's chapter 13 plan represented a notable achievement by Mr. Scholl, accomplished after the expenditure of a substantial amount of time, in a case in which the probability successful was uncertain. Nevertheless, in the course of guiding this case to confirmation, Mr. Scholl took action that necessitates the unfavorable ruling on his Application for allowance of his counsel fees. Next, I will explain how that issue came to the fore.

**B.**

The proposed chapter 13 plan that was the subject of the pivotal June 11, 2007 decision was the Debtor's Seventh Amended Plan. Paragraph 4.A of that Plan, filed on February 12, 2007, see Docket Entry No. 136, provided for payment of administrative expenses, including Mr. Scholl's counsel fees, "from the proceeds of a sale or refinancing of [the Debtor's] Home." There is nothing out of the ordinary about ¶4.A of the Seventh Amended Plan.

On June 15, 2007, a few days after the decision, the Debtor filed her Eighth Amended Chapter 13 Plan. See Docket Entry No. 160. Paragraph 4.A of this Plan was revised to provide for the payment of administrative expenses as follows:

> These claims include all administrative expenses, which they believe will be the Trustee's commissions and an estimated amount of $25,000 attorneys' fees to counsel, **which is secured by a mortgage in favor of counsel** against the Home. and which shall be paid from the proceeds of a sale or refinancing of the Home.

(emphasis added).

Juxtaposing the Seventh Amended Plan and the Eighth Amended Plan, it appears that some time after March 2, 2007 and before June 15, 2007,[1] the Debtor executed a mortgage in favor of Mr. Scholl on the Property to secure payment of the legal fees incurred during this bankruptcy case. In informal and formal communications with the court after the filing of the

---

[1] On March 2, 2007, Mr. Scholl filed a supplemental disclosure of compensation under Fed. R. Bankr. P. 2016(b). (See Docket Entry No. 137). This disclosure, which was apparently made to put on the record that Mr. Scholl was owed approximately $20,000 in legal fees at the time, makes no mention of any mortgage on the Property to secure payment of those fees. I will assume that the disclosure was accurate and infer from the absence of any disclosure regarding the existence of a mortgage on the Property that that the mortgage transaction referenced in the Eighth Amended Plan occurred after the March 2, 2007 supplemental disclosure was filed.

Eighth Amended Plan, Mr. Scholl has acknowledged that he obtained a mortgage position on the Property during the postpetition/pre-confirmation phase of this bankruptcy case.

On April 16, 2008, after confirmation of the Revised Tenth Amended Plan,[2] Mr. Scholl filed the Application. On May 9, 2008, he filed a Certification of No Response. On May 14, 2008, I scheduled a hearing on the Application[3] through an Order that advised Mr. Scholl that he should be prepared to address whether the fees allowed in this case should be reduced due to his "taking and recording a mortgage against the Debtor's real property prior to confirmation of the Debtor's chapter 13 plan."[4] The hearing was held and concluded on May 27, 2008 and the matter is now ripe for disposition.

---

[2] I read the reference to the mortgage in ¶4.A of the confirmed plan as merely descriptive, i.e., it discloses the fact that the mortgage exists. It is not a plan provision that is designed to validate the mortgage Mr. Scholl acquired postpetition, bind parties in interest and override the customary procedures for the allowance of professional compensation in bankruptcy cases. See Fed. R. Bankr. P. 2016(a) (requiring court allowance of professional fees upon application); see generally In re Bonanno, 78 B.R. 52, 57 (Bankr. E.D. Pa. 1987) ("[I]f the Code and Rules provide specific mechanisms to be employed . . . [a party in interest] may safely assume that its rights will be unaffected unless the debtor invokes those procedures").

[3] Notwithstanding the absence of objections to the Application, a bankruptcy court "has a duty to review fee applications . . . a duty which . . . derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest." In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) (emphasis in original).

[4] The May 14, 2008 Order scheduling the hearing on the Application also alerted Mr. Scholl to a second issue. A significant portion of the fees Mr. Scholl requests be allowed are for services provided to Mrs. Froio in connection her bankruptcy case and the adversary proceeding that arose in that case. The May 14, 2008 Order advised Mr. Scholl that he should be prepared to address "the basis of his entitlement to the allowance of fees in this bankruptcy case for services provided to another individual." Because, at this time, I am disallowing all of the fees requested in the Application, it is unnecessary for me to address this second issue.

**III.**

**A.**

Mr. Scholl's Application requires me to address whether a debtor's counsel may take money or property from the debtor without bankruptcy court authorization during the postpetition/pre-confirmation phase of a chapter 13 case in payment or as security for payment of unpaid professional fees where the payment is derived from "property of the bankruptcy estate." While many bankruptcy issues require nuanced analyses and result in the answer, "It depends," this is not such an issue. The answer to this question is an unequivocal, "No."

**1.**

As a starting point, it is indisputable in this case that the Property was property of the Debtor's bankruptcy estate. The Debtor as of the commencement of the case was the owner of the Property and the Property falls squarely the general definition of property of the estate set forth in 11 U.S.C. §541(a).[5] The value of the Debtor's interest in the Property far exceeds her available exemption. Indeed, under the confirmed Revised Tenth Amended Plan, the realization of that value through sale of the property will provide the lion's share of the plan funding. Thus, there is no doubt that when Mr. Scholl took a mortgage on the Property prior to confirmation, the property interest he obtained was property of the Debtor's bankruptcy estate.

---

[5] Subject to certain exceptions, section 541 defines property of the estate as including, inter alia, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). This already broad definition is to be read expansively. E.g., In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000) (citing Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 490-91 (3d Cir. 1997)).

It is also indisputable that the execution of a mortgage by the Debtor and delivery of it to Mr. Scholl was a transfer to him of property of the estate. It matters not that the purpose of the transaction was to provide security to Mr. Scholl for payment of his counsel fees; the mortgage itself transferred property to Mr. Scholl. Section 101 of the Bankruptcy Code expressly defines the term "transfer" as including the creation of a lien. 11 U.S.C. §101(54); see also In re Funches, 381 B.R. 471, 496 & n.39 (Bankr. E.D. Pa. 2008) (creation of a mortgage results in a transfer of an interest in property) (citing cases).[6]

**2.**

Section 330(a) of the Bankruptcy Code authorizes the court to award compensation from the bankruptcy estate to trustees, examiners, statutory ombudsmen and professionals employed under 11 U.S.C. §327. Although counsel for a chapter 13 debtor is not appointed by the court under §327, §330(a)(4)(B) expressly authorizes the allowance of reasonable compensation from

---

[6] I note that generally, money or property transferred by a chapter 13 debtor to counsel postpetition/pre-confirmation usually will constitute the transfer of property of the bankruptcy estate. This is so regardless whether the money or property is derived from the debtor's prepetition assets or assets acquired postpetition. If prepetition, the property is estate property through 11 U.S.C. §541(a). If postpetition, the money or property is property of the estate by virtue of 11 U.S.C. §1306(a). See In re Mayeaux, 269 B.R. 614, 626 (Bankr. E.D. Tex. 2001) ("It is elementary bankruptcy law that all post-petition earnings of a Chapter 13 debtor and all property which a Chapter 13 debtor acquires in the post-petition period constitutes property of the bankruptcy estate"); accord Barron v. Countryman, 432 F.3d 590-597-98 (5th Cir. 2005); In re Young, 285 B.R. 168, 174 n.11 (Bankr. D. Md. 2002). In some cases the source of money or property transferred to counsel could be non-estate property, such as a funds from a retirement account that is subject to 11 U.S.C. §541(c)(2). Or, the property may be property that was exempted under 11 U.S.C. §522(b) (although it is not entirely clear when, in the course of a bankruptcy case, claimed exemptions are "finalized"). As stated in the text, there is no plausible argument in this case that the property interest Mr. Scholl received through the mortgage on the Property was non-estate property.

the bankruptcy estate to the debtor's counsel "for representing the interests of the debtor in connection with the bankruptcy case" after consideration of certain specified factors.

The Federal Rules of Bankruptcy Procedure implement these statutory provisions. Rule 2016(a) provides, inter alia:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

(emphasis added).

Read together, 11 U.S.C. §330(a) and Fed. R. Bankr. P. 2016(a) require that, after the commencement of a chapter 13 case, counsel for the debtor apply for and receive court authorization before collecting any money or property from the debtor.

> When viewed as parts of an integrated structure of fee regulation, these provisions indicate a chapter 13 debtor's attorney may not collect fees from a debtor postpetition without a court order. To hold otherwise would undermine the court's authority and responsibility to monitor and control the fees of chapter 13 debtors' attorneys, and would interfere with the court's exclusive jurisdiction over estate property under 28 U.S.C. § 1334(e).

In re Berg, 356 B.R. 378, 383 (Bankr. E.D. Pa. 2006) (quoting In re Anderson, 253 B.R. 14, 20 (Bankr. E.D. Mich. 2000)); accord In re Taylor, 2004 WL 1746112, at *1 (Bankr. D.D.C. Aug. 4, 2004).

Unapproved transfers to the debtor's counsel of property of the estate also run afoul of 11 U.S.C. §363(b):

> even without any reference to § 329(a) and Rule 2016(b), a Chapter 13 debtor, in possession of estate property under § 1306(b), has no authority to transfer estate property to an attorney without proper notice and opportunity for hearing under § 363(b)(1), since such a transfer could not be properly characterized as a transfer in the ordinary course of business . . . .

Mayeux, 269 B.R. at 626.

Arguably, Mr. Scholl also violated 11 U.S.C. §362(a)(4), which stays "any act to create, perfect, or enforce any lien against property of the estate." Section 362(a) applies to "all entities." The term entity is defined in 11 U.S.C. §101(15) as including a "person," and therefore would encompass Mr. Scholl.[7]

---

[7] These fundamental principles stated above may not be totally inflexible. In Taylor, the court observed that, arguably, if certain conditions exist, an attorney "may accept a deposit of estate funds to be held in trust for payment of fees that may be allowed at a future date" provided that: (1) the arrangement is disclosed under Fed. R. Bankr. P. 2016(b); (2) the terms of the arrangement are that the funds are not to be used to pay attorney's fees unless and until allowed by the court; and (3) the funds are to be promptly refunded if the fees are not allowed. 2004 WL 1746112, at *2. In context, the Taylor court may have been referring to money accepted by an attorney as a prepetition bankruptcy retainer. Nevertheless, the same principles would seem to apply to a postpetition/pre-confirmation payment from the debtor to counsel for bankruptcy services already provided or to be provided. To receive such a payment without running afoul of the bankruptcy regulatory scheme, the transaction would have to be disclosed and counsel would have to maintain the funds in a trust account until the payment is allowed by the bankruptcy court. In effect, for administrative convenience, the attorney would simply be segregating funds that remained property of the debtor (and the bankruptcy estate); upon demand by the debtor, the attorney would be obliged to transfer the money in the trust account back to the debtor. Presumably, the reason an attorney would go to all of this trouble is to reduce the temptation that the debtor may have to use the money available for payment of the legal fee for other purposes.

The Taylor court also opined that, at least in some circumstances, the requirement that payments to counsel be approved by the bankruptcy court applies to payments made after confirmation of a chapter 13 plan. The instant case involves a transfer to the debtor's counsel that occurred pre-confirmation. Therefore, I need not consider whether counsel has any duties, other than disclosure under Rule 2016(b), with respect to payment of legal fees by the debtor after confirmation of a chapter 13 plan.

**3.**

Separate and apart from the requirement to apply for court approval of counsel fees to be paid from the bankruptcy estate, Fed. R. Bankr. P. 2016(b) mandates that the debtor's counsel file a disclosure regarding compensation that the debtor has paid or promised to pay. Specifically, Rule 2016(b) requires counsel to file "the statement required by § 329 of the Code." 11 U.S.C. §329 mandates disclosure of "all compensation paid or agreed to be paid" for services rendered in connection with the case.

In other words, whether or not the debtor's counsel must file a §330/Rule 2016(a) fee application to obtain court approval of compensation to be paid from the estate, counsel must file a separate statement disclosing the compensation that the debtor has paid or has promised to pay. Section 329 does limit the required disclosure to payments or agreements made "after one year before the date of the filing of the petition." Significantly, while this language limits the "reach back" period for the required disclosure, it imposes no prospective limitation.

Thus, through its incorporation of the requirements of 11 U.S.C. §329, Rule 2016(b) mandates that the debtor's counsel disclose all compensation either received postpetition or promised to be paid postpetition. Further, the Rule requires that "a supplemental statement . . . be filed within 15 days after any payment or agreement not previously disclosed."

**4.**

It is well established that bankruptcy courts have broad discretion to determine the appropriate response to an attorney's transgression of the compensation rules. Berg, 356 B.R. at 383-84.

> Since the provisions of the Bankruptcy Code and Rules that regulate attorneys fees are designed to protect creditors and the debtor from overreaching attorneys, it follows that to ensure that protection, the bankruptcy court would have the authority to deny any and all compensation where there has been a breach of the law. [In re Kisseberth, 273 F.3d 714, 721 (6th Cir. 2001) (citing cases).] This sanction is often found to be the most appropriate remedy given "'the importance of the fee disclosure [and fee application and court approval] requirement, the extent to which that requirement was almost totally disregarded by an experienced bankruptcy practitioner, and the need to compel future compliance on his part and on the part of all counsel appearing in the bankruptcy court.' " Id. (quoting district court opinion). Accord In re Redding, 251 B.R. 547, 553 (Bankr. W.D. Mo. 2000), [aff'd, 272 B.R. 874 (B.A.P. 8th Cir. 2001] (violations of responsibilities under Code and Rules by experienced bankruptcy attorney well aware of requirements was knowing, deliberate and blatant so as to warrant disgorgement of fee he received of $10,011.40 to the trustee). Indeed disgorgement of the entire payment may be proper in certain instances even though the failure to comply resulted from negligence or inadvertence. Kisseberth, 273 F.3d at 721; In re Park-Helena Corp., 63 F.3d 877, 882 (9th Cir.1995).

Id. at 384 (footnote omitted); accord In re Larrieu, 2000 WL 36328, at *4 (E.D. Pa. Jan. 18, 2000); In re Larson, 2004 WL 4960378, at *3 (Bankr. D. Idaho Feb. 4, 2004).[8]

**B.**

Based on the principles discussed above, it requires no extended analysis to conclude that Mr. Scholl acted improperly when, postpetition and prior to confirmation of the Debtor's Revised Tenth Amended Plan, he took a mortgage on the Property to secure payment of his unpaid legal fees. Court approval was necessary under 11 U.S.C. §§330(a) and/or 363(b) before the Debtor could transfer estate property to Mr. Scholl. Mr. Scholl did not seek court approval for at least

---

[8] One court has suggested that the consequences of compensation misconduct may go beyond disallowance of fees and include fines or even suspension from practice. In re Fricker, 131 B.R. 932, 941 (Bankr. E.D. Pa. 1991); see also In re Downs, 103 F.3d 472, 477 (6th Cir. 1996) (affirming award of sanctions).

ten (10) months and perhaps as long as fifteen (15) months after his receipt of a mortgage interest in the Property.  Further, disclosure of the transfer was required within fifteen (15) days.  See Fed. R. Bankr. P. 2016(b).  Mr. Scholl did not disclose the transaction for as much as three (3) months after it occurred.

At the hearing on the Application, Mr. Scholl offered two (2) justifications for his conduct.  First, he emphasized that there was nothing secretive about the mortgage transaction because it was disclosed in ¶4.A of the Debtor's Eighth Amended Plan.  Second, he contends that acceptance of postpetition compensation by debtors' counsel without court approval is commonplace in chapter 13 cases.

To be generous, these arguments are feeble.

**1.**

Initially, I observe that Mr. Scholl's method of making the disclosure of the mortgage transaction was inadequate.  Fed. R. Bankr. P. 2016(b) requires counsel to file a supplemental disclosure "within 15 days after any payment or agreement not previously disclosed."

If my inference is correct that the mortgage transaction took place after March 2, 2007 and before June 15, 2007,  after consummating the transaction, Mr. Scholl never filed any supplemental statement as required by Rule 2016(b).  Instead, he casually made the disclosure that a mortgage transaction had taken place in the body of an amended chapter 13 plan.

Disclosure of a debtor's financial transaction with counsel by insertion of a phrase in the middle of a chapter 13 plan is not consistent with the transparency of disclosure that the filing of a supplemental Rule 2016(b) statement is meant to provide.  In addition, because no details

regarding the mortgage transaction have ever been stated on the record, I cannot determine whether the disclosure in the Eighth Amended Plan on June 15, 2007 was made within fifteen (15) days of the transaction, as required by Rule 2016(b). Nonetheless, I acknowledge that the transaction was not kept a secret indefinitely; it appears that disclosure was made within three (3) months of the transaction; and the creditor who participated most actively in the bankruptcy case was aware of the transaction after it was disclosed in the Eighth Amended Plan.[9]

The more fundamental problem with Mr. Scholl's position is that mere disclosure of a transaction by itself does not validate the transaction and is not a substitute for the court authorization that is statutorily mandated. I acknowledge that reported cases involving disgorgement of counsel fees frequently have involved attorneys who made inaccurate or misleading disclosures or failed to make any disclosure at all.[10] Without question, the failure to make the required Rule 2016(b) disclosure compounds and exacerbates the impropriety when an attorney accepts payment of estate property without court authorization. But disclosure is not a safe harbor. Sections 330 and 363 of the Bankruptcy Code impose the separate requirement of court approval of the transaction. Indeed, it is troubling that an attorney as experienced as Mr. Scholl apparently fails to grasp this simple distinction.

At the May 27, 2008 hearing, Mr. Scholl cited two (2) cases in support of his position that

---

[9] The creditor I refer to is James Froio, whose role in the case is explained in detail in my prior Opinion. The chapter 13 Trustee was also aware of the mortgage transaction following the filing of the Debtor's Eighth Amended Plan.

[10] E.g., In re Redding, 263 B.R. 874, 877 (B.A.P. 8th Cir. 2001); In re Ladevereaux, 2006 WL 549239, at *2 -3 (Bankr. D. Mass. Mar. 6, 2006); In re Bartmann, 320 B.R. 725, 749 - 750 (Bankr. N.D. Okla. 2004) (collecting cases).

there was no impropriety because the mortgage transaction was disclosed: Matter of Leitner, 221 B.R. 502 (Bankr. D. Neb. 1998) and In re Automend, Inc., 85 B.R. 173 (Bankr. N.D. Ga. 1988). Neither case is on point.

The primary issue in Leitner was whether a mortgage taken by the debtor's counsel before the commencement of a chapter 7 bankruptcy case to secure payment of fees was valid and passed through the bankruptcy case unaffected. Leitner, 221 B.R. at 503-04. Leitner has no applicability in this chapter 13 case in which Mr. Scholl obtained his mortgage after the commencement of the bankruptcy case. The difference, of course, is that in Leitner, the transfer did not involve property of a bankruptcy estate as no estate existed at the time of the transfer; here, the mortgage transaction effected a transfer to Mr. Scholl of property of the Debtor's bankruptcy estate

In Automend, a chapter 11 case, the court rejected an application for appointment of counsel for the debtor where counsel had taken a real estate mortgage, in lieu of a cash retainer, on the day before the commencement of a chapter 11 case. Automend, 85 B.R. at 175. At the hearing, Mr. Scholl acknowledged that the issue in Automend was the appointment of counsel under 11 U.S.C. §327, not the allowance of counsel fees under 11 U.S.C. §330. Nonetheless, he argued that the case was instructive because of the emphasis it placed on the attorney's failure to properly disclose the mortgage transaction. He contended that unlike the attorney in Automend, he had disclosed his mortgage transaction with the Debtor. In citing Automend, Mr. Scholl overlooks his failure to file the supplemental statement required by Rule 2016(b) and again misses the distinction between the separate requirements of disclosure and court approval.

**2.**

Mr. Scholl's second justification for his conduct need not detain me long. Not only did Mr. Scholl fail to offer any evidence of the alleged commonplace violations of the law by other attorneys, but even if true, the fact that other unnamed attorneys, at unnamed times, in unnamed transactions, may also be violating the statute and rules of court does not excuse Mr. Scholl's transgression.

Put in its best light, Mr. Scholl may be suggesting that the imperative of operating an economically viable law practice and the exigencies of chapter 13 practice compel attorneys representing chapter 13 debtors to "bend the rules." Presumably, he means to suggest that because chapter 13 debtor practices tend to be volume practices with small profit margins per case, if a particular case involves a substantial amount of postpetition work[11] (particularly if the work that was reasonably unanticipated when the attorney accepted the engagement), economic survival requires that counsel press the debtor for payment of legal fees prior to plan confirmation.

I reject these implicit contentions. An attorney must exercise business judgment in deciding what cases to accept. If an attorney accepts a small prepetition retainer before undertaking the representation of a chapter 13 debtor and subsequently finds himself or herself providing services of a value much greater than the amount of the retainer (and perhaps even an amount that exceeds the rehabilitating debtor's ability to pay through the trustee's distribution

---

[11] The postpetition services necessary might involve, <u>inter alia</u>, objections to claims, defense of motions for relief from stay, defense of motions to dismiss or adversary proceedings that must succeed to render a debtor's plan confirmable.

under the chapter 13 plan), the attorney's problem is attributable primarily to the decision to accept the case in the first place. That the case acceptance decision did not work out favorably or as expected is not, by itself, a justification for ignoring and violating the statute and the rules of court.

Moreover, there are other remedies available to counsel. In an appropriate case, counsel may be able to obtain leave of court to withdraw his or her appearance. Or, as Mr. Scholl could have done here, counsel can seek court authority to enhance the prepetition retainer from property of the estate. I do not mean to suggest that counsel has any entitlement to these remedies if the representation has adverse financial consequences for counsel. Whether relief is appropriate and if so, what relief should be afforded, is a discretionary decision that bankruptcy courts must make on a case by case basis.

In short, there is no "economic expediency" defense available to an attorney who violates the rules governing attorney compensation in bankruptcy cases.

For these reasons, I conclude that Mr. Scholl failed to comply with 11 U.S.C. §330(a) and Fed. R. Bankr. P. 2016(b) and there need be consequences attending his failure to satisfy his legal obligations. I consider next what those consequences should be.

## C.

This is not Mr. Scholl's first offense. What I find especially troubling is that Mr. Scholl's actions came only a few months after the issuance of a decision by another judge in this district identifying the impropriety of almost identical conduct by Mr. Scholl – the postpetition acceptance of property of a chapter 13 bankruptcy estate on account of unpaid legal fees. See In

re Berg, 356 B.R. 378 (Bankr. E.D. Pa. 2006).

In Berg, Mr. Scholl filed a chapter 13 petition on behalf of the debtor on November 29, 2005 after accepting a $500.00 prepetition retainer. Id. at 379. The debtor later moved to convert the case to chapter 11. A hearing on the motion was held on June 26, 2006 and the motion was granted on August 14, 2006. Id. at 379-80. Between those two dates, the debtor received an unanticipated income distribution from his business and paid Mr. Scholl an additional $5,000.00 for the services previously rendered in the chapter 13 case. See id. Subsequently, the U.S. Trustee filed a motion requesting that the court order Mr. Scholl to disgorge the $5,000.00 payment.

In her Memorandum Opinion, (then Chief) Judge Sigmund outlined, in detail, the same fundamental principles regarding the disclosure of attorney compensation and the requirement of court authorization for payment of professional compensation from the bankruptcy estate that I summarized in Part III.A., above. See id. at 380-83. Judge Sigmund concluded her summation of the applicable legal principles with the observation that the "duty to secure court approval of post-petition compensation from the estate is . . . a fundamental principle of bankruptcy practice." Id. at 383. Judge Sigmund found, as I have here, that the property received by Mr. Scholl postpetition ($5,000.00 in Berg) was property of the estate and that Mr. Scholl's acceptance of the money without court authorization was a "clear violation[] of the law." Id. Taking into account Mr. Scholl's status as experienced bankruptcy practitioner and as a former judge of this court, Judge Sigmund ordered him to disgorge the entire $5,000.00 that he had received from the debtor postpetition. She left open the possibility, however, that after disgorgement of the funds, Mr. Scholl might receive some compensation for his services during

the chapter 13 phase of the case, reserving a decision on that issue until after a scheduled hearing on Mr. Scholl's pending application for allowance of compensation.[12]

The Berg decision was issued on October 23, 2006. It appears that Mr. Scholl took a mortgage on the Property in this case some time after March 2, 2007 and before June 15, 2007.

It is almost incomprehensible that only four (4) to seven (7) months after Berg, a decision that, for all intents and purposes, sanctioned him, Mr. Scholl would again violate the rules governing attorney compensation in a chapter 13 case in almost the exact same way. His conduct is especially mystifying given the fact that the relevant rules that he is obliged to follow were set out for him in detail in Berg and are not unsettled legal principles.[13]

Given this history, I have no difficulty in concluding that the estate property Mr. Scholl received without court authorization must be disgorged. Further, like the court in Berg, I will not allow any compensation to Mr. Scholl until that disgorgement has taken place. Therefore, I will exercise my discretion to disallow the Application in its entirety and require that Mr. Scholl promptly return the property of the estate that he took without court authorization. He may accomplish this by marking the mortgage on the Property satisfied or by some equivalent action.

Further, in an effort to fashion a sanction that is commensurate with the nature and gravity

---

[12] Subsequently, an order was entered allowing compensation of $2,000.00. See Bky. No. 05-39380 (Docket Entry No. 177).

[13] For this reason, Mr. Scholl's conduct is not comparable to that of a party or attorney continuing to take a position contrary to a reported decision of the bankruptcy court on an unsettled issue that has not been decided by the Court of Appeals. There is no division of authority regarding the question of an attorney's obligation to seek and obtain court approval for compensation from the bankruptcy estate and Mr. Scholl has made no serious argument that Berg was incorrectly decided.

of the offense, but which takes cognizance of the positive result Mr. Scholl achieved in his representation of the Debtor in this case, I am willing to consider the allowance of compensation after Mr. Scholl has restored the <u>status quo ante</u> with respect to the Property. Thus, after the mortgage has been removed from the Property, Mr. Scholl may file a renewed application for compensation. At that time, I will determine the amount of compensation, if any, to be allowed. Mr. Scholl can expect that, at a minimum, his fees will be disallowed to a sufficient extent to communicate to him again that his violation of the fundamental rules of professional compensation in bankruptcy cases will not be tolerated in this court. In any renewed application, I also will consider whether Mr. Scholl should suffer any other consequences as a result of his unacceptable conduct.

   An order consistent with this Memorandum will be entered.

**Date:   June 13, 2008**

                  **ERIC L. FRANK**
                  **U.S. BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:		KAREN JENSEN		:	Chapter 13
					:
		Debtor			:	Bky. No. 04-34567ELF

# O R D E R

AND NOW, upon consideration of the Application for Compensation ("the Application") filed by the Debtor's counsel, David A. Scholl, Esquire, ("Mr. Scholl"), and after a hearing, and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The Application is **DENIED**, subject to ¶4 below.
2. Mr. Scholl shall return forthwith the property of the estate that he received without authorization from this court, by marking satisfied the mortgage he holds on the Debtor's residence (5 Booth Lane, No. 6, Haverford, PA 19041) or by some equivalent action that terminates his interest in the property.
3. On or before, **July 14, 2008**, Mr. Scholl shall file a written certification of his compliance with the requirements of ¶2 above.
4. Upon his compliance with the requirements of ¶¶2-3 above, Mr. Scholl may file a renewed application for compensation.

Date:   June 13, 2008

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE