**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | KAREN JENSEN | : | Chapter 13 |
| | | : | |
| | Debtor | : | Bky. 04-34567ELF |
| | | : | |

# M E M O R A N D U M

**I.**

Before me is the Expedited Motion for Reconsideration ("Motion") filed by the Debtor's counsel, David A. Scholl, Esquire ("Mr. Scholl"). Mr. Scholl seeks reconsideration of a Memorandum and Order I entered on June 13, 2008 denying his Application for Compensation pending the return of estate property he received without court authorization during the postpetition/pre-confirmation phase of this chapter 13 bankruptcy case.

For the reasons set forth below, I will correct a nondispositive factual error in the prior Memorandum ("the June 13th Memorandum"), but will nonetheless deny the Motion.

Although the June 13th Memorandum stated, incorrectly, that there was a complete absence of disclosure in Mr. Scholl's Amended Rule 2016(b) Statement filed on March 2, 2007 regarding the mortgage he took against the Debtor's residential property without court approval, that error does not undermine the rationale of the decision. The accuracy and completeness of Mr. Scholl's disclosure was not prior decision's core basis. The duty to disclose is a distinct obligation and is not a substitute for the statutorily-mandated court approval that 11 U.S.C. §§330(a) and/or 363(b) require before a chapter 13 debtor may transfer estate property to his or her counsel for unpaid fees. Because Mr. Scholl failed to seek court approval, disallowance of his Application for Compensation, in its entirety, is appropriate until Mr. Scholl takes the remedial measures required by the Order of June 13, 2008 ("the June 13th Order").

## II.

Mr. Scholl filed his Motion on June 16, 2008. The Motion begins by describing the circumstances leading up to his decision to obtain and record a mortgage against the Debtor's residence.

Mr. Scholl asserts that some time after he filed the Debtor's bankruptcy case, difficulties and complexities developed that he did not anticipate. (Motion ¶3). He says that "in early 2007," he discussed these complexities and the additional services that would be required because of these complexities with the Debtor who "suggested, without prompting from Counsel, that Counsel take a Mortgage against her property at 5 Booth Lane, No. 6, Haverford, PA 19041 . . . as security for payment of his fees." (Id. ¶4). He says that he agreed to this arrangement and "shortly thereafter filed an Amended [Rule] 2016(b) Statement on March 2, 2007, which disclosed the arrangement for Counsel to receive $200/hour <u>and also disclosed that the source of compensation was to be "Proceeds of sale of home secured by a Mortgage in the amount of $25,000.00</u>." (Id. ¶5 (emphasis in original)). Mr. Scholl further asserts that he recorded the Mortgage on the Debtor's residence on March 6, 2007. (Id.). He does not state when the mortgage instrument was executed (and he did not attach a copy of it to the Motion).

Next, and most significantly, Mr. Scholl asserts his belief that making a proper disclosure under Fed. R. Bankr. P. 2016(b) was his "sole obligation . . . regarding the Mortgage, and that it was not necessary for him to file any motion or application seeking approval of his doing so." (Motion ¶8). He contends that "he has not received any compensation as a result of the entry of the Mortgage, that it is not necessary to obtain court permission to receive compensation from a Chapter 13 debtor before receiving same and only that such compensation be disclosed, and that

applications for compensation in Chapter 13 cases are generally not entertained until confirmation has been obtained, which was not the case in March, 2007." (Id.).

As I read the Motion, Mr. Scholl makes four (4) arguments in support of his request that I vacate the June 13th Order.

First, he contends that the June 13th Memorandum "relied heavily on the erroneous finding that the Mortgage was not disclosed in the Amended [Rule] 2016 Statement." (Id. ¶7). Second, he argues that disclosure of the mortgage transaction "was his sole obligation," (Id. ¶8), and he had no duty to seek court approval of the mortgage transaction. Third, Mr. Scholl contends that "he has not received any compensation as a result of the entry of the Mortgage." (Id. (emphasis added)). Finally, he seeks to distinguish In re Berg, 356 B.R. 378 (Bankr. E.D. Pa. 2006) on the grounds that: (a) the debtor's attorney (Mr. Scholl) received money, not a mortgage and (b) as a decision that, in any event, "provided no guidance" regarding the proper procedure to be followed in this case. (Id. ¶9). Mr. Scholl suggests that to the extent the disallowance of his fees was based on a perception that his conduct constituted a repetition of the shortcomings identified by the court in Berg, the decision was erroneous.[1]

These arguments are without merit.

---

[1] Mr. Scholl also adheres to the position that Berg was incorrectly decided. He states that he "continues to believe that, under the circumstances of that case, the disclosure of the receipt of the retainer was appropriate." (Id. ¶9).

3

### III.

#### A.  The Amended Rule 2016(b) Statement

I have re-examined the Amended 2016 Statement that Mr. Scholl filed on March 2, 2007, which is attached to the Motion as Exhibit "A." On the Exhibit "A" copy of the Amended 2016 Statement, Mr. Scholl has circled certain language that he contends constitutes disclosure of the mortgage on the Debtor's property that he obtained and recorded. In addition to checking "Debtor" in response to paragraph 4's question concerning the source of compensation to be paid to Mr. Scholl, the following text has been inserted: "Proceeds of sale of home secured by a Mortgage in the amount of $25,000.00."

Whereas all of the other insertions that Mr. Scholl made on the Amended 2016 Statement appear in bolded font, the now circled language that appears after the query contained in paragraph 4 ("The source of compensation to be paid to me is:") appears in non-bolded, smaller font that blends with the font of the boilerplate provisions of the Rule 2016 form. This caused me to miss it upon my earlier review.

Having now considered the verbiage, I am not completely convinced that Mr. Scholl's textual insertion transparently discloses that the Debtor had already executed and that Mr. Scholl intended to record a postpetition/pre-confirmation mortgage on the Debtor's property. The inserted language is ambiguous. It leaves unclear whether Mr. Scholl already has a mortgage or whether he simply intended to take a mortgage in the future.

Nevertheless, I admit my error in failing to recognize that Mr. Scholl included language in his Amended Rule 2016 Statement that referenced the mortgage. I also will accept Mr. Scholl's representation that he intended the March 2, 2007 Amended Rule 2016(b) Statement to

be a disclosure of his agreement with the Debtor to secure the payment of his fees by the execution and recordation of a mortgage on her residential real property.  Thus, to the extent the June 13th Memorandum was factually incorrect and the inaccuracy reflected adversely on Mr. Scholl's competence and integrity with respect to his fulfillment of his disclosure obligations under Fed. R. Bankr. P. 2016(b), this Memorandum shall serve as a retraction.

Notwithstanding this factual error, I remain convinced that Mr. Scholl's conduct violated the Bankruptcy Code and Federal Rules of Bankruptcy Procedure and therefore, I will not vacate the June 13th Order.

The <u>ratio decidendi</u> of the June 13th Memorandum was Mr. Scholl's failure to seek court approval before extracting from the Debtor an interest in estate property.  It was not my mistaken belief that there was a three (3) month delay in disclosing the transaction under Rule 2016(b).[2]  As I stated in the June 13th Memorandum, "[t]he more fundamental problem with Mr. Scholl's position is that mere disclosure of a transaction by itself does not validate the transaction and is not a substitute for the court authorization that is statutorily mandated." (June 13th Memorandum at 12 (emphasis added)).  "[D]isclosure is not a safe harbor."  (<u>Id.</u>).  At a minimum, §§330 and 363(b) of the Bankruptcy Code require court approval of postpetition

---

[2]  Indeed, in the following passage in the June 13th Memorandum, I recognized that the practical impact of the perceived delay in disclosure was relatively minimal:

> I acknowledge that the transaction was not kept a secret indefinitely; it appears that disclosure was made within three (3) months of the transaction; and the creditor who participated most actively in the bankruptcy case was aware of the transaction after it was disclosed in the Eighth Amended Plan.

(June 13th Memorandum at 12).

transfers of interest in property of the debtor's estate.

Therefore, the factual misstatement regarding the content of the Amended Rule 2016(b) Statement Mr. Scholl filed on March 2 2007 does not provide grounds for modification of the June 13th Order.

### B.  Debtor's Counsel's Obligation to Obtain Court Approval

As his next ground for seeking reconsideration of the June 13 Memorandum and Order, Mr. Scholl challenges the decision's central holding – that, during the postpetition/pre-confirmation phase of a chapter 13 case, a debtor's counsel may not take money or property from the bankruptcy estate without bankruptcy court authorization.  He asserts the sweeping legal proposition that "it is not necessary to obtain court permission to receive compensation from a [c]hapter 13 debtor before receiving same and [it is only necessary] that such compensation be disclosed."  (Motion ¶8).

Mr. Scholl cites no legal authority to support this radical position or to contradict the authorities cited at pages 6-8 of the June 13th Memorandum .  Therefore, I have no reason to reconsider the analysis and conclusions set forth in the prior Memorandum.  I adhere to the view that Mr. Scholl has a fundamental misunderstanding of his legal obligations as counsel to a chapter 13 debtor.

### C.  Receipt of a Mortgage Position As Compensation Under 11 U.S.C. §330(a)

The requirement that counsel for a chapter 13 debtor obtain court permission before taking property of the bankruptcy estate as compensation for the services rendered to the debtor

6

is rooted in 11 U.S.C. §330(a)(4)(B), which provides that a court may allow reasonable "compensation" to a chapter 13 debtor's attorney. I am unpersuaded by Mr. Scholl's suggestion that taking a mortgage on property is not a form of compensation.

The Bankruptcy Code does not define the term "compensation." Black's Law Dictionary, however, defines compensation to include "[r]enumeration and other benefits received in return for services rendered." Black's Law Dictionary (8th ed. 2004). Applying this definition, which I find to be a sensible and appropriate one, leads to the conclusion that Mr. Scholl received compensation when he took a mortgage on the Debtor's real property during the postpetition/pre-confirmation phase of the case. In doing so, Mr. Scholl obtained value and a distinct benefit -- an interest in property of the bankruptcy estate. He received this benefit in return for services he rendered to the Debtor. Although the benefit was not in the form of cash, it was nonetheless recompense for the services Mr. Scholl provided in connection with this bankruptcy case.[3] That

---

[3] In concluding that the mortgage was intended to compensate Mr. Scholl for his past services, I have considered and rejected an argument that may be implied in the Motion, i.e., that Mr. Scholl's receipt of the mortgage in or about March 1, 2007 was not "compensation" because it was intended to secure only future fees, not past fees.

In describing the genesis of the mortgage transaction, Mr. Scholl states that the Debtor's decision to volunteer a mortgage on her property was based on her concern that Mr. Scholl "would not continue to represent her vigorously if additional compensation were not provided," leading her to her offer of a mortgage "without prompting . . . as security for payment of his fees." (Motion ¶4). This passage does not state with any precision whether the Debtor offered mortgage as security for unpaid fees already incurred or only for future fees to be incurred. If the mortgage was offered solely as security for fees to be incurred in the future, it is perhaps more difficult to conceptualize the property interest received by counsel as "compensation." However, it is unnecessary to further analyze this argument because it is not supported by the facts.

In the circumstances presented here, it is inconceivable that the mortgage was offered as a device to secure the payment of future fees only. It seems indisputable that the mortgage was designed to secured both future fees and the fees already incurred. By early 2007,

the estate property Mr. Scholl received was intended to be transformed into cash only at a later date makes it no less a form of compensation within the meaning of 11 U.S.C. §330(a) and Fed. R. Bankr. P. 2016(a).

Further, by taking the mortgage, Mr. Scholl impermissibly elevated his claim for legal fees to a secured position, thereby subordinating the claims of the debtor's other creditors while their hands were tied by the automatic stay, 11 U.S.C. §362(a).[4] Mr. Scholl's implied argument that taking the mortgage was of no consequence and not compensation ignores the implications of 11 U.S.C. §363(b) and §362(a)(4), Code provisions which prohibit the transfer of estate property other than in the ordinary course of business[5] and the creation of a lien on estate property, respectively. To the extent there is any uncertainty whether the term "compensation" includes the receipt of a property interest in real estate, bankruptcy policy embodied in §363(b) and §362(a)(4) militates in favor of a broad construction of the term.

---

the litigation that resulted in the "pivotal" decision of June 11, 2007, (June 13th Memorandum at 2-3) was close to conclusion. Based on the posture of the case in early 2007, no reasonable inference can be made that Mr. Scholl and the Debtor contemplated another $25,000 of legal services would be required. Indeed, my review of Mr. Scholl's time records submitted in support of his Application for Compensation suggests that of the $29,236.37 in compensation requested, $17,803.21 is attributable to the period before February 1, 2007 and only $11,433.16 for the subsequent period. Further, the only sensible reading of Mr. Scholl's March 2, 2007 Amended Rule 2016(b) fee disclosure is that the mortgage was designed to be the source of compensation for <u>all</u> of his fees in the case (which he then estimated to be $25,000.00) and not merely for fees incurred after the creation of the mortgage.

[4]    Mr. Scholl also arguably violated 11 U.S.C. §362(a)(4) which stays acts to "create, perfect or enforce any lien against the property of the estate." Section 362(a), by its terms, applies to "all entities."

[5]    11 U.S.C. §363(b) refers to the powers of a trustee. However, 11 U.S.C. §1303 provides that the debtor has the powers of a trustee under, <u>inter alia</u>, §363(b).

In sum, because the record demonstrates that the execution and delivery of the mortgage provided Mr. Scholl with a source of property for a later transformation into a cash payment for all of the fees incurred by the Debtor in connection with the case, I am satisfied that the property interest Mr. Scholl received was "compensation" within the meaning of 11 U.S.C. §330(a).

### D. In re Berg

Finally, I reject Mr. Scholl's suggestion that Berg provided no guidance to him and that therefore, in exercising my discretion in this matter, I should not consider Mr. Scholl a "repeat offender."

In Berg, the court stated unequivocally, in a part of the opinion distinct from the discussion regarding mere disclosure of attorney compensation, that:

> **a chapter 13 debtor's attorney may not collect fees from a debtor postpetition without a court order**. To hold otherwise would undermine the court's authority and responsibility to monitor and control the fees of chapter 13 debtors' attorneys, and would interfere with the court's exclusive jurisdiction over estate property under 28 U.S.C. § 1334(e).

356 B.R. at 383 (emphasis added).

In light of this passage, I find Mr. Scholl's argument to be disingenuous at best. The situation in Berg fully parallels this case. In both cases, Mr. Scholl undertook the representation of a debtor and was required to provide services of a value far in excess of his prepetition retainer prior to confirmation of a chapter 13 plan. In both cases, to his credit, he continued to represent the debtor's interests zealously, despite the risk that he would not be compensated. In both cases, feeling insecure about his prospects for payment and the likelihood that the representation would entail a substantial amount of additional, possibly uncompensated work, Mr. Scholl arranged for

9

a chapter 13 debtor to deliver money or property to him – transfers designed to compensate him, at least in part, for postpetition services previously provided to the debtor.  In both cases, Mr. Scholl failed to request court approval before accepting property of the estate as compensation for services rendered.

In Berg, the court communicated to Mr. Scholl clearly and in no uncertain terms that his actions were improper.  In this case, I reiterate that message.

**IV.**

For the reasons set forth in the June 13th Memorandum, and after consideration of the arguments raised in the Motion, I remain convinced that counsel may not obtain and record a postpetition/pre-confirmation mortgage on property of the debtor's estate to secure the payment of legal fees without court approval.   Accordingly, I deny Mr. Scholl's request that I vacate the June 13th Order.

Date:    **June 18, 2008**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF PENNSYLVANIA

IN RE:       **KAREN JENSEN**     :       Chapter 13
:
                **Debtor**             :       Bky. 04-34567ELF
:

## O R D ER

**AND NOW**, upon consideration of the Expedited Motion of David A. Scholl ("Mr. Scholl") for Reconsideration of Memorandum and Order of June 13, 2008 ("the Motion"), and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that:

    1.  To the extent the Memorandum of June 13, 2008 was factually incorrect with respect Mr. Scholl's fulfillment of his disclosure obligations under Fed. R. Bankr. P. 2016(b) and that inaccuracy reflected adversely on Mr. Scholl, the accompanying Memorandum shall serve as a retraction on those issues; and

    2.  To the extent the Motion requests that the Order of June 13, 2008 be vacated, the Motion is **DENIED**.

Date:   **June 18, 2008**

                                        **ERIC L. FRANK**
                                        **U.S. BANKRUPTCY JUDGE**